IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| NICOLE DIFLUMERI and LISA REINGOLD, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. 6:25-CV-01899-AGM-LHP |
| v. | ) | |
| RAYMOND JAMES FINANCIAL, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Defendant Raymond James Financial, Inc. ("Raymond James") moves the Court to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiffs seek to recast the ordinary use of routine website analytics as violations of 1960s-era federal and state wiretap statutes. But the complaint neither alleges nor identifies any statutory "intercepted communication" or any disclosed personal information, much less any harm or injury. As developed below, the law does not recognize standing or liability for the anonymous cookie tracking targeted by the complaint.

**RELIEF REQUESTED**

Raymond James respectfully requests that the Court dismiss the complaint. The grounds for dismissal are specified in the following memorandum of law.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

SUMMARY OF ALLEGATIONS

The 11-count, nationwide class-action complaint asserts that Raymond James's website uses cookies to "track and target" visitors, and that clicking "decline" on the website's cookie banner does not stop all functioning of cookies. (Comp. ¶ 2.) The complaint alleges that cookies "whose purpose is to transfer personal information and communications to numerous third parties" continues after that declination. The third parties involved, according to the complaint, are Google, Meta, Twitter, LinkedIn, and Microsoft. (*Id.* ¶¶ 4, 36-53.) The complaint refers to these third parties as "AdTech Companies." (*Id.* ¶ 4.) The complaint does not allege whether the named Plaintiffs or any other users of Raymond James's website were logged into their own accounts with the AdTech Companies (for example, their Google accounts) when they visited the website.

The named Plaintiffs also do not allege that they received any advertising as a result of visiting Raymond James's website. (*Id.* ¶¶ 96-115.) Nor do they allege that they sustained any harm; that their names, email addresses, personal financial information, account numbers, Social Security numbers, stock trades or other

personal identifying information were disclosed to AdTech Companies; that they received any resulting communication or suffered any adverse consequences; or that the third-party cookies alleged to result from their use of Raymond James's website allowed AdTech Companies to identify them individually.

The only purported injury alleged is "loss of privacy" and "loss of control" of "personal information," a grievance restated in various ways in identical conclusory allegations but with no supporting facts whatsoever. (*Id.* ¶¶ 105, 115.) That "personal information" is not specified. The complaint does not allege that it includes *identifying* information or information constituting personal information under any applicable law. Also absent is any allegation connecting the alleged website functions to either named Plaintiff; the numerous screenshots embedded in the complaint are not alleged to be from any device connected to the Plaintiffs.

## ARGUMENT

### A. PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT THE CLAIMS IN THE COMPLAINT

#### 1. To establish standing, a plaintiff must allege facts establishing a concrete and particularized injury.

It is axiomatic that named plaintiffs seeking to represent a class must have Article III standing to assert their claims. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); *see Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976). Accordingly, the named Plaintiffs must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo,* 578 U.S. at 339. A "concrete" injury is "real, and not abstract." *Id*. at 340.

Importantly here, an alleged violation of a statute does not automatically confer standing. *Spokeo* firmly establishes this principle. The plaintiff in *Spokeo* alleged that the defendant had violated the Fair Credit Reporting Act by including false information in his credit report. The plaintiff failed to allege, however, any harm resulting from that violation. That failure precluded Article III standing. The Court reasoned that a "bare procedural violation" of a statute was not enough to confer standing. *Id*. at 341. The Court applied that same principle more recently in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021), holding that the unlawful

inclusion of derogatory information about class members in credit reports which were not disseminated did not cause the requisite concrete harm.

The Eleventh Circuit applied these principles in *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) (en banc), holding that an alleged violation of the Fair and Accurate Credit Transactions Act due to the inclusion of an extra credit card digit on receipts—and an elevated risk of identity theft—was not concrete enough to confer standing. "A conclusory statement that a statutory violation caused an injury is not enough," and "so neither is a conclusory statement that a statutory violation caused a risk of injury." *Muransky*, 979 F.3d at 928. "[W]e consider two things when we evaluate whether concrete harm flows from an alleged statutory violation—and thus whether the plaintiff has standing. First, we ask if the violation itself caused harm, whether tangible or intangible, to the plaintiff. If so, that's enough. If not, we ask whether the violation posed a material risk of harm to the plaintiff. If the answer to both questions is no, the plaintiff has failed to meet his burden of establishing standing." *Id.* The Eleventh Circuit also rejected Muransky's alternative arguments that standing arose when he received a non-compliant receipt or from the time and effort he spent safeguarding that receipt. *Id.* at 930-31.

The Eleventh Circuit has applied these principles in other cases. In *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020), the court held that

plaintiffs' alleging violations of the Fair Debt Collection Practices Act lacked standing where they and class members received allegedly misleading debt-collection letters but neither named plaintiff alleged he was actually misled by the letter. The court also noted that neither named plaintiff alleged reliance on any misrepresentation, much less any resulting damage. The court also rejected the plaintiffs' assertions of standing based on potential risks and informational injuries.

Most recently, *Nelson v. Experian Information Solutions Inc.*, 144 F.4th 1350 (11th Cir. 2025), held that neither loss of time and money spent correcting an erroneous credit report that violated the Fair Credit Reporting Act nor an increased risk of identity theft are injuries sufficient to confer Article III standing. As detailed below, Plaintiffs' allegations fail to meet their burden to satisfy the foregoing requirements for standing.

2. Plaintiffs fail to allege a concrete and particularized injury.

Although the complaint purports to describe in fulsome detail the operation of Raymond James's website and how third-party AdTech Companies (Google, *et al.*) set cookies, the complaint falls far short of alleging *facts* establishing that Plaintiffs suffered the concrete and particularized injuries required for standing.

As an initial matter, the complaint fails to include any factual allegations that either Plaintiff even personally experienced the purported tracking described in its included screenshots. (Comp. ¶¶ 40-48.) But even if it did, the allegations would

still be insufficient to establish standing. The cookies involved allegedly enabled AdTech Companies to gather information on website visitors. And the complaint alleges in conclusory fashion that Plaintiffs sustained an abstract "loss of privacy" and "loss of control" as a result of that information gathering. But the complaint fails to identify any of the "personal information" supposedly gathered, and it fails to allege an actual injury sufficient to establish Article III standing. The complaint does not even allege any facts showing that Plaintiffs' own use of the website resulted in any "loss of privacy" or "loss of control."

If, as the Eleventh Circuit has held in the cases discussed above, an increased risk of identity theft is not sufficient to confer standing, then a risk of receiving an advertisement certainly falls short. No sufficient allegation is made that Plaintiffs were exposed to, much less suffered, any cognizable harm. The complaint's conclusory and superficial allegations of injury do not even assert that Plaintiffs received any advertisements from AdTech Companies as a result of any action by Raymond James, much less sustained any harm. (Comp. ¶¶ 105, 115.) They do not allege that the cookies transmitted any identifying information or content capable of identifying them individually—not names, account numbers, Social Security numbers, email addresses—nothing of that sort (because they were not transmitted). The website activity that the cookies allegedly recorded was not linked to them in a particularized fashion. The complaint also does not allege that

the content of any personal financial information, such as stock trades or any other transaction, was disclosed (again, because it was not). Nor is any financial or other economic injury alleged. And *potential* exposure to advertising, an ineluctable fact of American life, is not actionable in any court under any recognized theory.

The only specific examples of the information allegedly tracked (in paragraphs 163(c), 206(c), and 215(c)) show that this information was not sensitive, personal, or financial, and certainly not capable of being traced back to any named Plaintiff by Raymond James. Plaintiffs allege tracking of customer requests for generic investment information, customer zip codes, identities of nearby financial advisors, and titles of pages visited. But they do not allege that they are the customers or that the zip codes and pages visited are theirs. (Even if they did, Raymond James would not know that, then or now.)

Plaintiffs allege the AdTech Companies, which are not defendants, caution against collecting financial data. Plaintiffs hyperlink several AdTech Company websites. In reality, these websites bolster Raymond James's arguments for dismissal—they show that Raymond James's conduct, even as alleged, was not inconsistent with the AdTech Companies' policies and that the information that was allegedly tracked was not "personal," "sensitive," or of any other nature that would support Plaintiffs' claims. Google's financial products and services page says nothing about tracking the sort of information alleged to be tracked here.

Google's page on best practices explains that personally identifying information includes "email addresses, personal mobile numbers, and social security numbers," none of which are alleged to have been tracked here. Meta's "About Prohibited Information" page instructs entities to not share "information defined as sensitive under applicable laws, regulations or industry guidelines,' including "social security numbers and credit card numbers," which is not included in any of the information alleged to be shared in the complaint. LinkedIn's page about its Insight Tag states that the tag "may be included on a generic homepage for a pharmacy or a bank," but it may not be included on a page where users "manage their financial accounts or transactions." All allegations of information tracked relate to generic webpages rather than the specific transactions that may be the subject of these policies. (Comp. ¶¶ 16, 135, 163(c)¸ 194, 206(c), 215(c).)

Notably, more specific allegations than Plaintiffs' have failed to suffice for standing in other recent similar cases. In *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025), the putative class plaintiff action alleged a violation of the California wiretapping statute by a website offering online therapy. The plaintiff alleged that cookies were placed by the website and that TikTok obtained medical and personal identifying information from them. The defendant moved to dismiss on standing grounds, arguing that the named plaintiff alleged nothing about her visit to the website and

offered instead only generic allegations "untethered to Plaintiff's *own* experiences." *Id*. at *6. The plaintiff argued that her right to privacy was infringed. The court rejected that argument and dismissed the case, concluding that "[a] plaintiff adequately alleges harm to [her] privacy interests in the context of internet browsing by alleging tracking of 'browsing activities,' including 'an individual's likes, dislikes, interests, and habits over a significant amount of time.'" *Id*. at *7 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020)). Plaintiffs here have alleged far less about their own experiences—both substantively and temporally—and indisputably fail to qualify for standing.

Another tracking case in which standing allegations were found insufficient is *Saeedy v. Microsoft Corp*., No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023). The plaintiffs alleged that Microsoft's Edge browser intercepted and collected users' internet browsing activities and private data for Microsoft's use. The court granted Microsoft's motion to dismiss for lack of standing:

> Plaintiffs have no recognized reasonable expectation of privacy in their browsing data…The interception of the type of information contained in Plaintiffs' browsing data does not bear a close relationship to a harm traditionally recognized as a basis for lawsuits. The nature of the information that is allegedly intercepted must be private, "personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy.". . . Data and information that has been found insufficiently personal includes mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers,

> anonymized data, product selections added to a shopping cart, and website browsing activities.

*Id*. at * 4. The anonymous information allegedly shared here is far more removed from core privacy interests than the individualized browsing information captured by Microsoft in *Saeedy*. This case is distinguishable from other technology cases recognizing standing, which typically involve disclosure of *personal* medical information or *personal* video browsing habits. *E.g.*, *Nixon v. Pond5, Inc.*, No. 1:24-cv-05823 (JLR), 2025 WL 2030303 (S.D.N.Y. July 21, 2025) (private video viewing information). No such disclosure is alleged here. Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction.

B. IN THE ALTERNATIVE, PLAINTIFFS FAIL TO STATE A CLAIM

Even if Plaintiffs had standing, all their claims would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the plausibility standard is not akin to a probability requirement, it requires more than a sheer possibility that a defendant has acted unlawfully. *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022). Threadbare recitals of the elements of claims and conclusory statements are insufficient. *Id.*

1. Plaintiffs' Wiretapping Claims (Counts One, Three, and Seven)

Plaintiffs bring three "wiretapping" claims – Count One under the federal Electronic Communications Privacy Act (the "Federal Wiretap Act"), Count Three under the Florida Security of Communications and Surveillance Act (the "Florida Wiretap Act"), and Count Seven under the California Invasion of Privacy Act (the "California Wiretap Act"). These older criminal wiretapping statutes are conspicuously ill-suited to apply to website tracking,[1] and any ambiguity within criminal codes should be resolved in favor of defendants under the well-established rule of lenity. *United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); *N. Carillon, LLC v. CRC 603, LLC*, 135 So. 3d 274, 279 (Fla. 2014) (rule of lenity applies in civil case related to criminal statute).

a. The Federal Wiretap Act (Count One)

Plaintiffs' Federal Wiretap Act claim fails for at least three distinct reasons. First, there can be no claim Raymond James engaged in any "wiretapping" because Raymond James was a party to the alleged communication. 18 U.S.C. § 2511(2)(d) (no violation of Federal Wiretap Act "where such person is a party to the communication"). If Plaintiffs' interactions with the website were communications,

---

[1] The Federal Wiretap Act – 1968; the Florida Wiretap Act – 1969; and the California Wiretap Act – 1967.

then Raymond James would be the intended recipient. A party cannot be the intended recipient and second party to a communication *and* at the same time be an "interceptor" of that communication. As explained by the Third Circuit, "[t]autologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 143 (3d Cir. 2015); *see United States v. Burke*, No. 8:24-cr-00068-KKM-TGW, 2025 WL 2732827, at *9-10 (M.D. Fla. Sept. 25, 2025) (holding that the party-to-the-communication exception is inherently contained in the word "intercept" because it implies a third party to a communication), *appeal docketed*, No. 25-13969 (11th Cir. Nov. 12, 2025). Raymond James therefore could not intercept or make any unauthorized connections within the purview of the wiretapping statutes as a matter of law. This conclusion is consistent with other courts that have interpreted these statutes. *See In re Google Inc. Cookie Placement*, 806 F.3d at 145 (dismissing wiretapping claim where defendant was intended recipient).[2]

---

[2] There are some cases holding that the party-to-the-communication exception does not apply where there is a simultaneous duplication of communications by a third party to the communication, but that is not the case here. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (holding that Facebook's simultaneous duplication of certain action on a third-party website did not satisfy the party-to-the-communication exception). Here, Raymond James is undisputably a party to any alleged communication, by Plaintiffs' own admissions.

The only exception to one-party consent is where the intended recipient engaged in interception for the purpose of committing a crime or tort *independent* of the alleged wiretapping. *Id.*; *see Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010) (noting that several circuits have concluded that "the defendant must have the intent to use the illicit recording to commit a tort or crime beyond the act of recording itself"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (dismissing wiretap claims because the "other criminal or tortious purposes . . . are either duplicative of the allegedly unlawful wiretapping itself or relate to claims that the Court has determined have failed"). There has been no crime or tort sufficiently alleged here for the reasons set forth herein, let alone one independent of any alleged recording. All alleged torts or statutory violations relate to the same underlying conduct as the wiretapping claims.

Second, even if there were an "interception," the Federal Wiretap Act requires the information alleged to be intercepted be the "content" of communications. 18 U.S.C. §§ 2511(3)(a). But as a matter of law tracked data is not "content." "Content" is defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Content means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Content

does not include "record information regarding the characteristics of the message that is generated in the course of the communication." *Id.*

Information about viewed web pages or icons that a user clicks on are routinely held to not be "content" under the Federal Wiretap Act (and state analogs) because those types of interactions do not convey the substance or meaning of any messages. *Id.* at 1109; *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) ("user's name, email address, Google account name, home city and state, zip code, and in some instances telephone number" are not content). This sort of "tracking" alleged by Plaintiffs is not "intercepting" of "content." Here, at a minimum, the Court must dismiss the Federal Wiretap Act claim (Count One) to the extent that claim is based upon non-content data such as the alleged identities of financial advisors' webpages viewed, taps on a phone number on a webpage, the titles of webpages visited, and the fact that some unidentified person is among the millions of customers of Raymond James. (Comp. ¶¶ 16, 135, 194.) None of those categories of information contain the *content* of communication between Plaintiffs and Raymond James and accordingly cannot be the basis of any wiretapping claim.

Third, Plaintiffs' Federal Wiretap Act claim also fails because even if Raymond James could be an "interceptor" (which it could not as a party to the communication), Plaintiffs have not alleged that the communications were

*contemporaneously* intercepted. Though the Federal Wiretap Act does not explicitly require the acquisition of a communication occur contemporaneously with the transmission of the communication, courts have "uniformly concluded that an intercept requires contemporaneity." *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016); *see Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461 (5th Cir. 1994) (explaining that there is a difference between electronic communications, which can be intercepted, and electronic storage). Here, Plaintiffs did not allege any collection or tracking occurred at the same time as the alleged communications, so Count One fails for this reason as well.

b. Florida's Wiretap Act (Count Three)

The Florida Wiretap Act claim (Count Three) must be dismissed because the Florida Wiretap Act is inapplicable to website tracking technology. In *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *2 (Fla. Cir. Ct. June 17, 2021), the Miami-Dade County Circuit Court analyzed whether the Florida Wiretap Act applied to claims related to website tracking via session replay software (software that records a user's interactions on a website). This is essentially what Plaintiffs allege, though Plaintiffs' claims involve conduct far less intrusive than the session replay technology which they attempt to upgrade rhetorically into intercepting the content of communications. The court determined that the Florida Wiretap Act did not cover that sort of technology

because the purpose of the statute was to: "(1) protect the privacy of wire and oral communications, (2) prevent organized criminals from using oral and/or wire communications in their criminal activities, and (3) ensure that any information from such oral and wire communications would not be misused." *Id.* The court concluded, "Congress did not intend . . . to extend to the use of commonplace analytics software . . . ." *Id.* at *3.

Similarly, here, the enacting Florida legislature in 1969 could not have intended this sort of website tracking software to be the basis for liability under a statute meant to criminalize illegal recordings of communications. In fact, the statute exempts "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object" from the definition of "electronic communication" protected by the Florida Wiretap Act. Fla. Stat. § 934.02(12)(c). Cookies are precisely that—mechanisms that record users' movements across web pages. In other words, communications from a device which tracks a person cannot be the basis for a wiretap claim under Florida law. For that reason, Count Three (the Florida Wiretap Act claim) must be dismissed.

In addition, for the same reasons discussed above for the Federal Wiretap Act claim, the Florida Wiretap Act claim must be dismissed because the information alleged to be tracked does not constitute the "content" of a communication. The definition of "content" under the Florida statute is exactly the

same as the federal statute, so the same reasoning set out above applies. Fla. Stat. § 934.02(7); *Jacome*, 2 No. 2021-000947-CA-01021, WL 3087860, at *3 (holding that under the Florida Wiretap Act, "content" does not include a page a user views or items a user clicks).

Plaintiffs may point to *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025), as providing support for their Florida Wiretap Act claim, but that case involved allegations far different from those here. In *Orlando Health*, a patient used her healthcare provider's website to book medical appointments, authorize treatments, request medical records and invoices, communicate with providers, and conduct general research regarding symptoms and treatment related to specific illnesses. *Id.* at *2. She later allegedly received specific advertisements related to her medical conditions. *Id.* The court found those allegations sufficient because the plaintiff's communications conveyed substantive health information, precisely the kind of data that the Florida Wiretap Act was designed to protect. *Id.* at *5. The court also noted that the Florida Wiretap Act was enacted with medical records in mind. *Id.* at *4. By contrast, Plaintiffs here have only made conclusory allegations related to general information allegedly derived from tracking tools. There was no "substantive message" sent by Plaintiffs, nor are there even any allegations that Plaintiffs received specific targeted advertisements as a result of their interactions with the website.

c. California Wiretap Act (Count Seven)

The California Wiretap Act claim must be dismissed for reasons that parallel the grounds for dismissal of the Federal Wiretap Act claim. First, California law defines the "content" of a communication just as the Federal Wiretap Act does. *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("the meaning of 'contents' of a communication under [the California Wiretap Act] is the same under the [Federal Wiretap Act]"). Accordingly, the California Wiretap Act claim must be dismissed because the information allegedly tracked does not constitute the "content" of a communication under the law.

Second, Plaintiffs' California Wiretap Act claim also fails because Plaintiffs have not alleged that the communications were intercepted "in transit." California Penal Code § 631(a) requires that information be intercepted "in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California.]" Here, unlike in their allegations for the Federal and Florida Wiretap Act, Plaintiffs do not allege any collection or tracking occurred while the information was "in transit," but even their allegations related to the Federal and Florida Wiretap Act are conclusory. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (holding that allegations of secret interception "in real time" of transcripts was conclusory and did not allege

specific facts as to how or when the interception took place); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."). Moreover, Plaintiffs concede that any information was not intercepted "in transit" because Plaintiffs allege that the information was "categorize[d]" before being transmitted to the AdTech Companies. (Comp. ¶ 17.)

2. Privacy Common Law Causes of Action (Counts Four, Eight, and Nine)

Plaintiffs have failed to state a claim for any of the privacy-related common law causes of action (Counts Four, Eight, and Nine). To begin with, all privacy-related torts fundamentally require conduct amounting to an invasion of privacy. Plaintiffs' general descriptions of how the Raymond James website functions do not show that Plaintiffs' privacy has been invaded in any actionable way.

Plaintiffs do not even allege *they* specifically input information about *their* data. Instead, Plaintiffs generally allege that "communications on the Website" include broad categories of general browsing information (Comp. ¶ 163(c)) that reveal no personal information or financial information specific to any individual and show screenshots from an unidentified individual's use of the website. (Comp. ¶¶ 36-48.) This sort of general browsing information does not constitute sensitive information because it does not relate specifically to Plaintiffs but is general

unidentifiable information accessible to the public at large. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023) (dismissing complaint because plaintiffs' browsing history, including searches for doctors and specialists, did not constitute sensitive medical information since that information was general health information accessible to the public at large); *id.* at 1124 (dismissing further allegations about a hypothetical patient because the plaintiffs never alleged that they themselves took the actions alleged).

Even if Plaintiffs had sufficiently alleged some privacy interest was infringed, Plaintiffs still have not sufficiently alleged any of the privacy-related causes of action for other reasons, detailed below.

a. <u>Intrusion upon Seclusion under Florida Common Law (Count Four)</u>

Count Four, Intrusion upon Seclusion under Florida Common Law, must be dismissed because Plaintiffs have not alleged Raymond James invaded their private place. Publicly accessible websites are not private, and using them "from their own private spaces" on their private devices is irrelevant. (Comp. ¶ 161.) Intrusion upon seclusion requires that a person "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. 2d DCA 2021) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)). There must be

intrusion into a "private place," not merely a private activity, under Florida law. *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011).

In *W.W. v. Orlando Health, Inc.*, the court held that tracking tools placed onto a web browser did not constitute intrusion into one's private quarters under Florida law. No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892, at *9-10. Accordingly, Count Four must be dismissed.

b. Invasion of Privacy under the California Constitution (Count Eight)

Count Eight must be dismissed also because Plaintiffs have not sufficiently set forth allegations that establish an invasion of privacy under the California Constitution. The California Constitution sets a "high bar" for invasion of privacy claims. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). "Even disclosure of personal information, including social security numbers does not constitute an 'egregious breach of social norms' to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that tracking of the URL of pages a user visited on LinkedIn was not sufficient to allege an invasion of privacy (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Ca. 2012))); *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (finding no intrusion claim based on Google's collection and disclosure of users' data, including their browsing histories); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (finding no invasion of privacy by

disclosure of user's addresses, geolocation, the unique device identifier assigned to the user's device, gender, age, time zone, and information about app usage). Here, Plaintiffs' conclusory allegations about the information alleged to be tracked are not sufficient to demonstrate an invasion of privacy under the California Constitution. Further, Raymond James could not have invaded Plaintiffs' privacy since Raymond James was the intended recipient of Plaintiffs' information. It could not have "invaded" Plaintiffs' privacy using information that Plaintiffs voluntarily gave Raymond James. *See Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (no intrusion on seclusion claim because the defendant could not have intruded on "communications that it was always the intended recipient of"). In any event, Count Eight based on Article 1, Section 1 of the California Constitution must be dismissed to the extent that Plaintiffs seek damages, which are not available under California law. *Cousin*, 681 F. Supp. 3d at 1127-28 ("California's 'constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction' but it does not confer on a litigant a private right of action for damages." (quoting *Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021))).

c. <u>Intrusion upon Seclusion under California Common Law (Count Nine)</u>

Count Nine, Intrusion Upon Seclusion under California Common Law, must be dismissed for similar reasons. To state such a claim under California common

law, "a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020)) (internal punctuation omitted). Raymond James could not have possibly intruded into Plaintiffs' interactions on its own website. Plaintiffs do not allege that Raymond James was a third-party to Plaintiffs' dealings with another entity; rather, they allege that Raymond James is the second party to any alleged communications. As such, Raymond James could not have intruded into an area in which Plaintiffs had a reasonable expectation of privacy from Raymond James. Plaintiffs neither establish that the internet is a private place, conversation, or matter such that Plaintiffs had a reasonable expectation of privacy nor that disclosure of Plaintiffs' browsing history or other terms would be "highly offensive" to a reasonable person. *See Cousin*, 681 F. Supp. 3d at 1126-27 ("disclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct under either common law or the California Constitution").

3. Breach of Contract (Count Two)

Plaintiffs have failed to state a claim for breach of contract, so Count Two must be dismissed. Plaintiffs allege that the Cookie Consent Banner coupled with

the Privacy Policy manifests a contract between Raymond James and all of its website users. (Comp. ¶ 142). Plaintiffs allege that terms of the agreement are "simple: If a Website user rejects or declines Cookies as provided for in the Cookies Consent Banner and continues to use the Website, then Defendant promises it will stop the AdTech Company Cookies from tracking and targeting them." (Comp. ¶ 142.) But Plaintiffs fail to allege the elements of a valid contract. Under Florida law, an adequately pleaded breach of contract requires three elements, none of which are present here: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). The Raymond James privacy notice and cookie banner are not contracts but are informational disclosures. Raymond James did not make any offer to Plaintiffs related to cookies, nor did Plaintiffs "accept" any offer. No mutual obligations are alleged. Plaintiffs may ignore the Cookie Consent Banner, select "Accept," or select "Decline," but regardless of that choice, Plaintiffs would have the *same access* to the website.

Plaintiffs do not sufficiently allege that either the Cookie Consent Banner or the Privacy Policy are contracts. The Banner merely provides, "This website uses cookies to ensure you get the best experience on our website. By clicking 'X,' you accept all cookies by default and exit the banner." (Comp. ¶ 2.) Plaintiffs' only allegation related to the Privacy Policy is that it "confirms the 'Cookies and similar tracking technologies are widely used to . . . collect information about your online

preferences, and to customize content and advertisements you receive." (Comp. ¶ 20.)

Moreover, it is well-settled that privacy notices, like the one here, are not contractual in nature. The notices simply inform the recipients of practices and rights. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1092 (W.D. Wash. 2024) ("Because privacy notices serve to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions, they are not contractual in nature."); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) ("The fact that Plaintiffs had to acknowledge Defendants' privacy notice is of no consequence because such notices are not contractual in nature."); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (no breach of contract claim based on privacy notices). Accordingly, Count Two must be dismissed.

4. Unjust Enrichment (Counts Six and Eleven)

Plaintiffs' unjust enrichment counts (Counts Six and Eleven) must be dismissed because Plaintiffs allege no cognizable benefit conferred on Raymond James. To state a claim for unjust enrichment under Florida law, plaintiffs must allege what here they did not: (1) "a benefit conferred upon a defendant by the plaintiff," (2) "the defendant's appreciation of the benefit," and (3) "the defendant's

acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (citation omitted). California law is similar in this respect. *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238, 239 Cal. Rptr. 3d 908, 915 (2018) (the elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another" (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000))). To prevail, the plaintiff must "directly confer a benefit to the defendant." *Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC,* 372 So. 3d 277, 281 (Fla. 4th DCA 2023) (citation omitted).

Plaintiffs allege Raymond James received a benefit through Plaintiffs' data "which allowed Raymond James to better target them (and other individuals with similar interests) with advertising" (Comp. ¶ 179), but Plaintiffs have not alleged any facts showing that Raymond James, rather than any advertising companies, targeted them with any specific advertising related to the alleged information tracked. Plaintiffs' conclusory allegations that the alleged tracked data "allowed Raymond James to *better* target them" are not sufficient to actually show a benefit. (emphasis added). As discussed above, Plaintiffs have not pleaded how the loss of any alleged personal information actually harmed or impacted any specific person (including a named Plaintiff) and whether Raymond James used or benefited from

that information. It is not enough to allege Raymond James benefited simply by having bytes of information that relate at some level to Plaintiffs. *See Giasson v. MRA – Mgmt. Ass'n*, 777 F. Supp. 3d 913, 940-41 (E.D. Wis. 2025) (collecting cases holding that alleging personal information was conferred upon another is not sufficient to allege a benefit); *Bracy v. Americold Logistics LLC*, No. 1:23-cv-5743-TWT, 2025 WL 552676, at *7 (N.D. Ga. Feb. 19, 2025) (rejecting unjust enrichment claim because the only "benefit" alleged to have been provided was the plaintiffs' private information). Accordingly, Plaintiffs' unjust enrichment counts (Counts Six and Eleven) must be dismissed.

5. Misrepresentation (Counts Five and Ten)

Plaintiffs' fraudulent misrepresentation count under Florida law (Count Five) and intentional misrepresentation count under California law (Count Ten) must be dismissed because they fail to allege the elements of these torts with the required specificity. "Under Florida law, the elements of fraud are '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation.'" *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citation omitted). Under California law, the elements of fraud are: "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4)

actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230-31, 162 Cal. Rptr. 3d 864, 875 (2013) (citations omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The Eleventh Circuit requires plaintiffs to "plead the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Specifically, Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.*

Plaintiffs do not meet this standard. Their claims of alleged misrepresentation are tenuous at best. The Cookie Consent Banner provides, "This website uses cookies to ensure you get the best experience on our website. By clicking 'X,' you accept all cookies by default and exit the banner." (Comp. ¶ 2, Figure 1.) The Privacy Policy "confirms the 'Cookies and similar tracking technologies are widely used to . . . collect information about your online preferences, and to customize content and advertisements you receive." (Comp. ¶ 20.)

Critically, the complaint lacks necessary details about when Raymond James allegedly made these statements to the named Plaintiffs and how they were allegedly damaged or what Raymond James obtained. Plaintiffs in conclusory fashion state that their damages include "depriving them of the benefit of the bargain; causing the loss of money and/or property including their personal information, communications, and interactions; defrauding them out of their personal information; depriving them of their right to control their personal information; breaching their confidence; and damaging the value of their personal information, communications, and interactions." (Comp. ¶¶ 174, 226.) But Plaintiffs have not alleged: (1) what alleged information was lost by any specific person; (2) when that alleged information was lost; (3) how the loss of that alleged information has actually harmed or impacted any specific person; and (4) whether Raymond James used that information to serve any specific targeted advertising on the named Plaintiffs. Simply put, there are no specific allegations showing that Plaintiffs were damaged or that Raymond James received a benefit. The allegations in Counts Five and Ten thus lack the particularity needed to state a fraud claim in accordance with Rule 9(b) and must be dismissed.

## CONCLUSION

For the reasons set forth above, Raymond James respectfully moves the Court to dismiss the complaint.

**LOCAL RULE 3.01(g) CERTIFICATION**

Undersigned counsel, pursuant to Local Rule 3.01(g), certifies that they have met and conferred with Plaintiffs' counsel regarding the relief requested in this motion, and Plaintiffs' counsel opposes the relief requested herein.

Dated the 17th of November, 2025.

*/s/ Michael Bahar*
Michael Bahar (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW
Suite 700
Washington, DC 20001-3980
202.383.0882
*michaelbahar@eversheds-sutherland.com*

*/s/ Thomas M. Byrne*
Thomas M. Byrne (*pro hac vice*)
Amelia Toy Rudolph (FL State Bar #57015)
Rebekah Whittington O'Brien (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
404.853.8000
*thomasbyrne@eversheds-sutherland.com*
*amyrudolph@eversheds-sutherland.com*
*rebekahobrien@eversheds-sutherland.com*

*Attorneys for Defendant*
*Raymond James Financial, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing **DEFENDANT'S MOTION TO DISMISS** to be electronically filed with the Clerk of Court using the Court's CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Jacob L. Phillips
Joshua R. Jacobson
JACOBSON PHILLIPS PLLC
2277 Lee Road, Suite B
Winter Park, FL 32789
jacob@jacobsonphillips.com
joshua@jacobsonphillips.com

Samuel R. Jackson
Joseph Henry Bates, III
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
sjackson@cbplaw.com
hbates@cbplaw.com

This 17th day of November, 2025.

*/s/ Rebekah Whittington O'Brien*
Rebekah Whittington O'Brien