**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NICOLE DIFLUMERI and**
**LISA REINGOLD,**

**Plaintiffs,** **Case No.: 6:25-cv-01899-AGM-RMN**

**v.**

**RAYMOND JAMES FINANCIAL,**
**INC.,**

**Defendant.**

_______________________________________

**ORDER**

THIS CAUSE comes before the Court on a Motion to Dismiss (Doc. # 28; the "Motion") filed by Defendant Raymond James Financial, Inc. ("Raymond James"). On review of the Motion, the Response in Opposition (Doc. # 38; the "Response"), the Reply (Doc. # 41), and the allegations of the Complaint (Doc. # 1), the Motion is due to be granted.

## I. BACKGROUND

Plaintiffs Nicole Diflumeri and Lisa Reingold aspire to bring a nationwide class action to remedy what they claim were violations of their privacy. The factual allegations about Plaintiffs' own personal experience with the website are scarce, but they conclude that their privacy was violated when they visited Raymond James's website, which has a popup "Cookies Consent Banner." Though Plaintiffs omit any representation that the screenshot was taken by either of them or is an accurate representation of what they personally encountered on the website, Figure 1 in the Complaint is a screenshot of a banner that states: "This website uses cookies to ensure

you get the best experience on our website." Within the banner, there are effectively four options: (1) Manage Preferences, (2) Decline, (3) Accept, or (4) X, but the banner clarifies that "[b]y clicking 'X', you accept all cookies by default and exit the banner."

Though the Complaint does not allege that Plaintiffs encountered the cookie banner depicted in Figure 1, they do affirmatively allege that they clicked "Decline" when they encountered some cookie banner. Again, without alleging that they encountered the Cookie Consent Banner depicted as Figure 1 (the "Cookie Consent Banner"), Plaintiffs draw the conclusion that the words of the Cookie Consent Banner are a "promise" by Raymond James. That "promise" is to, in Plaintiffs' words, "stop Cookies from tracking and targeting visitors" if the visitor clicks "Decline." Plaintiffs further conclude that the statement in the Cookie Consent Banner is an "assurance" by Raymond James to its website visitors that, in Plaintiffs' words, the visitors "can maintain control and autonomy over their privacy."

Having drawn these conclusions about what the words in the Cookie Consent Banner mean, Plaintiffs conclude that Raymond James "does not uphold its promise." Plaintiffs allege that visitors to Raymond James's website have their interactions and communications with Raymond James "attended by a plethora of Cookies" and the purpose of those cookies is "to transfer personal information and communications to third parties—for both Raymond James's and the third parties' economic gain."

Plaintiffs allege that these third parties are "some of the largest data tracking and surveillance companies in the world—for example, Google, Meta, Twitter, LinkedIn, and Microsoft." The Complaint defines these data tracking and surveillance companies (both the named and unnamed ones) as the "AdTech Companies." Plaintiffs allege that Raymond James

affirmatively configured its website with cookies to "facilitate the AdTech Companies' interception and acquisition of sensitive personal information that fuels those AdTech Companies' highly-profitable surveillance and behavioral advertising operations." The AdTech Companies are not named as defendants in the case. And Plaintiffs do not allege facts about what "personal information and communications" were collected from their interactions with the Raymond James website. Instead, Plaintiffs simply allege that, within the last five months, they interacted and communicate with the Raymond James website to log into accounts, check investment portfolios, and transfer funds.

Plaintiffs do not allege what "sensitive personal information" belonging to them Raymond James allegedly collected through their website visit and gave to the AdTech Companies. Instead, in general terms, Plaintiffs simply allege that certain information belonging to "customers" of Raymond James is intercepted, without alleging that their own information was included.

The Complaint does not allege that Plaintiffs themselves received unwanted advertising from the AdTech Companies as a result of their visit to the Raymond James's website. Nor does the Complaint contain any factual allegations to support the legal conclusion that Plaintiffs were harmed. Plaintiffs don't allege that their names, email addresses, personal financial information, account numbers, Social Security numbers, stock trades or other personal identifying information were disclosed to AdTech Companies. They don't allege that they received any resulting communication or suffered any adverse consequences. Nor do they allege that the cookies collected from their visit to the Raymond James website allowed the AdTech Companies to identify Plaintiffs individually.

Although Plaintiffs allege that they suffered a "loss of privacy" and "loss of control" of "personal information," those allegations are conclusions and there are no facts alleged to support those conclusions. For example, Plaintiffs do not allege what "personal information" of theirs is involved. Nor does the Complaint allege that the unspecified "personal information" was the kind that would identify them, or constitute personal information under any applicable law. And although the Complaint includes various screenshots, Plaintiffs do not allege that the screenshots are theirs. They do not even allege that those screenshots are an accurate depiction of what they saw on the website.

Plaintiffs seek nationwide certification on two counts, with California and Florida subclasses on the other counts.

## II. LEGAL STANDARD

A Rule 12 (b)(1) challenge to subject matter jurisdiction may be either facial or factual. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A Rule 12(b)(1) facial attack on standing, as Raymond James makes here, assumes that all well-pleaded factual allegations of the complaint are true. The Court then determines whether these allegations plausibly suffice to establish federal jurisdiction, including standing to sue, as a matter of law. *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1216 (11th Cir. 2020).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that

is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the complaint, all facts are accepted as true, and all reasonable inferences from those facts are drawn in the light most favorable to the plaintiff. *Id.* Legal conclusions couched as facts are not accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although detailed factual allegations are not required, the complaint must contain more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Plaintiffs' Article III Standing

Raymond James argues that the Complaint must be dismissed in its entirety for lack of subject matter jurisdiction because Plaintiffs lack standing. Plaintiffs seek to represent a nationwide class; to do that, Plaintiffs must have Article III standing to assert their own claims. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); *see Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976). "[T]he 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). As the party invoking the court's jurisdiction, a plaintiff has the burden of establishing these elements at each stage of the litigation, *Trichell*, 964 F.3d at 996, and, at the pleading stage, this means a plaintiff must "clearly . . . allege facts" that plausibly establish

each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

An injury in fact is the "'foremost' standing requirement," *Trichell*, 964 F.3d at 996, and to adequately plead injury in fact a plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo,* 578 U.S. at 339. A "concrete" injury is "real, and not abstract." *Id.* at 340.

"As a general matter, tangible injuries qualify as concrete." *Trichell*, 964 F.3d at 997. In this case, Plaintiffs do not allege that they suffered any tangible injury. Although they allege that their privacy was invaded, the harm they allege is intangible and in the form of an invasion of their privacy. "Intangible injuries sometimes qualify as concrete, but not always." *Id.* And the Supreme Court has been clear that there is no automatic injury in fact just because a statute was violated because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (citing *Spokeo*, 578 U.S. at 331).

In *Spokeo*, without alleging any resulting harm, the plaintiff alleged violations of the Fair Credit Reporting Act. The Fair Credit Reporting Act establishes certain requirements for consumer reporting agencies and imposes liability for failure to comply with its requirements. *Id.* at 334. A consumer discovered that Spokeo, a consumer reporting agency, had generated a profile on him that contained inaccurate information. *Id.* at 336. The consumer filed a federal class action against Spokeo, alleging that it willfully failed to comply with the FCRA's

requirements. *Id.* The district court dismissed the complaint for lack of standing, finding that the consumer failed to properly plead an injury in fact. *Id.* The Ninth Circuit reversed on the grounds that, according to Ninth Circuit precedent, a statutory violation was typically a sufficient injury to confer standing. *Id.* The Supreme Court reversed the Ninth Circuit, holding that the failure to allege any resulting harm precluded Article III standing because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. More recently, the Supreme Court applied the same principle in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021).

The harm suffered by Plaintiffs must be sufficiently material and concrete. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 925 (11th Cir. 2020) (en banc). In *Muransky*, the Eleventh Circuit held that a plaintiff's allegations of harm were insufficiently material and concrete to confer standing when the plaintiff alleged that an extra digit was included on credit card receipts, creating an allegedly elevated risk of identity theft. "A conclusory statement that a statutory violation caused an injury is not enough," and "so neither is a conclusory statement that a statutory violation caused a risk of injury." *Id.* at 928. If no tangible or intangible harm is alleged, *Muransky* concluded that a risk of harm could be enough so long as the risk is material. *Id.*

To confer standing, the harm Plaintiffs suffered must also have been more than just a potential risk or a potential informational injury. In *Trichell*, plaintiffs who alleged violations of the Fair Debt Collection Practices Act lacked standing where they received allegedly misleading debt collection letters but did not allege they were misled by the letters. 964 F.3d at 1000. Neither named plaintiff alleged reliance on any misrepresentation, much less any resulting damage. *Id.* The *Trichell* court rejected the plaintiffs' assertions of standing based on potential risks and

informational injuries. *Id.* at 1002. More recently, *Nelson v. Experian Info. Solutions, Inc.*, 144 F.4th 1350 (11th Cir. 2025), held that, absent an allegation that it was published to a third party, third party standing is not conferred under Article III when the injury was merely the loss of time and money spent correcting an erroneous report, even where the erroneous credit report violated the Fair Credit Reporting Act and created an increased risk of identity theft.

When considering whether an intangible injury is sufficient to confer Article III standing, a court looks to historical analogs at common law. *Trichell*, 964 F.3d at 997. Though not controlling, *In re BPS Direct, LLC*, 175 F.4th 423 (3d Cir. May 11, 2026), is a recent example of the reasoning under facts that, while not identical, were similar. There, the plaintiffs alleged that the defendant retailers used session replay codes developed by various third-party providers that activated any time someone visited one of their websites. *Id.* at 427. According to the allegations, these codes allowed the surreptitious interception of nearly every action the user took on the site, including all keystrokes and text entries. *Id.* The codes allowed the defendants to create video replays of the website user's visits, which allegedly gave them insights into the performance of the websites and their advertising campaigns. *Id.* The consolidated actions alleged that the defendants violated the federal Wiretap Act (as alleged here), among other federal, state, and common law causes of action. Two plaintiffs purchased goods and entered their names, addresses, and payment and billing information into the website, and the session replay code captured that information. *Id.* at 428. The other plaintiffs browsed for items but made no purchases and did not enter their names and addresses or any other personal identifying information while on the websites. *Id.*

The district court granted a Rule 12(b)(1) motion and dismissed for lack of standing. *Id.* The Third Circuit affirmed as to the plaintiffs who did not make purchases and enter their related personal identifying information. *Id.* at 427. The Third Circuit concluded that the injuries alleged by these only-browsing plaintiffs were not analogous to the two common law torts on which they relied, public disclosure of private facts and intrusion upon seclusion. *Id.* at 429. The capturing of their clicks and movements on the website was neither sensitive nor linked to the plaintiffs' identities. *Id.* The court pointed out that "their electronic browsing for quotidian items was no more private than the physical browsing countless shoppers do daily in BPS's brick-and-mortar stores." *Id.* at 433.

The Third Circuit's reasoning is persuasive here. Although the Complaint describes the operation of Raymond James's website and how the third-party AdTech Companies set cookies, it falls far short of alleging facts establishing that Plaintiffs suffered the concrete and particularized injuries required for standing. Neither Plaintiff alleges that she personally experienced the purported tracking described in the Complaint's screenshots. Even if they had, Plaintiffs' allegations about the information gathering and its impact on them personally are too abstract and conclusory to confer Article III standing.

Contrary to Plaintiffs' contention, the common law tort of intrusion upon seclusion is not a historical analogue that suggests that Plaintiffs' asserted intangible injuries (if any) confer standing for Article III purposes. *See Trichell*, 964 F.3d at 997 (explaining that an analysis of whether an intangible injury is sufficiently concrete appropriately looks to whether the alleged intangible injury bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."). The tort of intrusion upon

seclusion is available when a plaintiff alleges "highly offensive" behavior, *see, e.g.*, *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. 3d DCA 2023), and as Raymond James observes, the risk of intangible harm Plaintiffs allege is an exposure to unwanted advertising. While perhaps irritating, exposure to unwanted advertising is a fact of modern life. Even if sufficiently alleged, this type of injury is simply not the type of "unacceptable conduct" that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Id.*

Of course, here, Plaintiffs don't even allege that they *were* exposed to an unwanted advertisement. If, as the Eleventh Circuit has held, an increased *risk of identity theft* is not sufficient to confer standing, then a potential *risk of receiving an unwanted advertisement* certainly falls short. The complaint's conclusory allegations of injury do not even assert that Plaintiffs actually received any advertisements from AdTech Companies as a result of any action by Raymond James. They do not allege that the cookies transmitted any identifying information or content capable of identifying them individually—not names, account numbers, Social Security numbers, credit card information, email addresses—nothing of that sort. The website activity that the cookies allegedly recorded was not linked to them in a particularized fashion. Nor is any financial or other economic injury alleged. And potential exposure to advertising is not actionable in any court under any recognized theory.

The only specific examples of the information allegedly tracked show that this information was not sensitive, personal, or financial. Raymond James is not alleged to have been able to connect that information to a specific user. And Plaintiffs stop short of saying any of *their* information of this type was actually tracked. Instead, Plaintiffs allege tracking of customer requests for generic investment information, customer zip codes, identities of nearby financial

advisors, and titles of pages visited. But they do not allege that they are the customers or that the zip codes and pages visited are theirs, much less any cognizable injury from the alleged tracking.

Plaintiffs allege the non-party AdTech Companies caution against collecting financial data, but Plaintiff failed to sufficiently demonstrate how those allegations support the premise that any information tracked on Raymond James's webpage was personal or sensitive in nature. For example, non-party Google's financial products and services page says nothing about tracking the sort of information alleged to be tracked on Raymond James's page. And Google's page on best practices explains that personally identifying information includes "email addresses, personal mobile numbers, and social security numbers," none of which are alleged to have been tracked here.

Non-party Meta's "About Prohibited Information" page instructs entities to not share "information defined as sensitive under applicable laws, regulations or industry guidelines," including "social security numbers and credit card numbers." The Complaint does not allege that any of that information was shared.

Non-party LinkedIn's page about its Insight Tag states that the tag "may be included on a generic homepage for a pharmacy or a bank," but it may not be included on a page where users "manage their financial accounts or transactions." The Complaint's allegations about tracked information relate to generic webpages, not the type of specific transactions that fall within non-party LinkedIn's policies.

Although not binding on this Court, other district courts have dismissed similar cases for lack of standing. In *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025), as part of a putative class action the named plaintiff alleged a

violation of the California wiretapping statute by a website offering online therapy. *Id.* at *1. The plaintiff alleged that cookies were placed by the website and that TikTok obtained medical and personal identifying information from them. *Id.* at *2. The defendant moved to dismiss on standing grounds, arguing that the named plaintiff alleged nothing about her visit to the website and offered instead only generic allegations "untethered to Plaintiff's *own* experiences." *Id.* at *6. The plaintiff argued that her right to privacy was infringed. *Id.* at *7. The court rejected that argument and dismissed the case, concluding that "[a] plaintiff adequately alleges harm to [her] privacy interests in the context of internet browsing by alleging tracking of 'browsing activities,' including 'an individual's likes, dislikes, interests, and habits over a significant amount of time.'" *Id.* at *7 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020)). Plaintiffs here have alleged far less about their own experiences—both substantively and temporally.

In *Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023), the plaintiffs alleged that Microsoft's Edge browser intercepted and collected users' internet browsing activities and private data for Microsoft's use. The court granted Microsoft's motion to dismiss for lack of standing:

> Plaintiffs have no recognized reasonable expectation of privacy in their browsing data…The interception of the type of information contained in Plaintiffs' browsing data does not bear a close relationship to a harm traditionally recognized as a basis for lawsuits. The nature of the information that is allegedly intercepted must be private, "personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy." . . . Data and information that has been found insufficiently personal includes mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities.

*Id.* at *4.

The anonymous information allegedly shared here is far more removed from core privacy interests than the individualized browsing information captured by Microsoft in *Saeedy*. And the factual allegations in this case are distinguishable from other technology cases recognizing standing, which typically involve alleged disclosure of personal medical information or personal video browsing habits protected by statute from disclosure. *See e.g.*, *Nixon v. Pond5, Inc.*, No. 1:24-cv-05823 (JLR), 2025 WL 2030303 (S.D.N.Y. July 21, 2025) (private video viewing information). No such disclosure is alleged here.

Plaintiffs argue that the Supreme Court's decision in *TransUnion v. Ramirez* helps their cause, but it does not. In *TransUnion*, the defendant publicly disseminated credit reports that falsely listed the plaintiffs as potential terrorists, drug traffickers, or serious criminals. *TransUnion*, 594 U.S. at 432. The Supreme Court agreed with the class members that being labeled a terrorist, drug trafficker, or a serious criminal was a harm closely related to common-law defamation. *Id.* The factual allegations in this case are simply nothing like that. At worst, Plaintiffs allege that they could have received unwanted advertising. No reasonable person would equate being labeled a terrorist with the receipt (or risk of receipt) of unwanted advertising.

For these reasons, Plaintiffs lack standing and have not persuaded the Court that it has subject matter jurisdiction. On that basis, the case must be remanded to state court. *See* 28 U.S.C. § 1447(c).

**B. Failure to State a Claim**

Even if this Court had concluded it had subject matter jurisdiction (it does not), Plaintiffs' claims are due to be dismissed for failure to state a claim.

### 1. Plaintiffs' Wiretapping Claims (Counts One, Three, and Seven)

Plaintiffs bring three "wiretapping" claims – Count One under the federal Electronic Communications Privacy Act (the "Federal Wiretap Act"), Count Three under the Florida Security of Communications and Surveillance Act (the "Florida Wiretap Act"), and Count Seven under the California Invasion of Privacy Act (the "California Wiretap Act"). Under the rule of lenity, "ambiguous criminal laws [are] interpreted in favor of the defendants subjected to them." *See United States v. Santos*, 553 U.S. 507, 514 (2008); *N. Carillon, LLC v. CRC 603, LLC*, 135 So. 3d 274, 279 (Fla. 2014) (holding rule of lenity applied in civil case related to criminal statute).

#### a. The Federal Wiretap Act (Count One)

Plaintiffs' Federal Wiretap Act claim fails for at least three distinct reasons. First, the Complaint fails to state a claim because for "wiretapping" because Raymond James was a party to the alleged communication. Under 18 U.S.C. § 2511(2)(d), there is no violation of Federal Wiretap Act "where such person is a party to the communication." To the extent the Complaint alleges the existence of any communications, those communications were with the Raymond James website and Raymond James was the intended recipient. As a matter of law, the intended recipient of a communication cannot also be an "interceptor" of that communication. As explained by the Third Circuit, "[t]autologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 143 (3d Cir. 2015); *United States v. Burke*, 801 F. Supp. 3d 1273, 1287 (M.D. Fla. 2025) (holding the party-to-the-communication exception is inherently contained in the word "intercept" because it implies a third party to a communication), *appeal docketed*, No. 25-13969 (11th Cir. Nov. 12, 2025). This conclusion is consistent with other

courts' interpretations of these statutes. *See In re Google Inc. Cookie Placement*, 806 F.3d at 145 (dismissing wiretapping claim where defendant was intended recipient).

It is true that the law recognizes an exception when the intended recipient engaged in interception for the purpose of committing a crime or tort independent of the alleged wiretapping, *id.; see Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010) (noting that several circuits have concluded that "the defendant must have the intent to use the illicit recording to commit a tort or crime beyond the act of recording itself"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (dismissing wiretap claims because the "other criminal or tortious purposes . . . are either duplicative of the allegedly unlawful wiretapping itself or relate to claims that the Court has determined have failed"), but the Complaint alleges only torts or statutory violations relating to the same underlying alleged conduct as the wiretapping claims.

In addition, Plaintiffs' assertion that Raymond James violated the Gramm-Leach-Bliley Act ("GLBA") fails because (1) the GLBA provision which Plaintiffs allege Raymond James violated is a civil provision, not a criminal statute; (2) the GLBA definition of personal information does not apply to the common-law counts or statutory claims because GLBA applies to financial institutions in certain contexts and not to state-based privacy claims; and (3) this allegation is not sufficiently made in the Complaint. A parallel argument was recently rejected in *Camm v. Reach Fin., LLC*, No. 25 Civ. 1921 (KPF), 2026 WL 861670 (S.D.N.Y Mar. 30, 2026), and there the district court explained that the crime-tort exception to the Wiretap Act's one-party consent provision was to be construed narrowly and could only apply when the crime or tort was the primary motivation or determinative factor for the defendant's conduct. *Id.* at *4. In

dismissing the Wiretap Act claim, the court held that the plaintiffs' alleged GLBA violations did not suffice:

> [T]he Court finds Plaintiffs' arguments about the GLBA to be unpersuasive because it is unclear whether Reach's alleged violation of the GLBA is criminal or tortious at all. Put differently, Reach could not have possessed a criminal or tortious intent if the independent act it undertook was not criminal or tortious itself. *See Caro*, 618 F.3d at 102 (requiring an allegation of "an independent tort that could provide the basis for the tortious intent necessary to bring a claim"). In general, "the GLBA sets forth both 'affirmative and continuing obligations' on the part of financial institutions to 'respect the privacy of [their] customers and to protect the security and confidentiality of ... nonpublic personal information.'" *Allen v. Quicken Loans Inc.*, No. 17 Civ. 12352 (ES) (MAH), 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018) (alterations adopted) (quoting 15 U.S.C. § 6801(a)). While the statute does impose criminal penalties, they pertain only to a section of the GLBA that prohibits the obtaining of or solicitation of a person to obtain customer information under false pretenses. *Id.*; 15 U.S.C. §§ 6821, 6823. A violation of Section 6802 of the GLBA — which Plaintiffs accuse Reach of committing (Compl. ¶ 95) — does not amount to a crime. In addition, Plaintiffs have not demonstrated that Reach's GLBA violation is a tort, especially given that the statute does not contemplate any private right of action. *See Shostack v. Diller*, No. 15 Civ. 2255 (GBD) (JLC), 2015 WL 5535808, at *7 (S.D.N.Y. Sept. 16, 2015) ("It is well-settled that the GLBA does not provide for a private right of action." (collecting cases)).

*Id.* at *5. Similarly, Plaintiffs here have not sufficiently alleged any crime or tort.

Second, even if there were an "interception," the Federal Wiretap Act requires the information alleged to be intercepted to be the "content" of communications. 18 U.S.C. § 2511(3)(a). "Content" is defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Content means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Content does not include "record information regarding the characteristics of the message that is generated in the course of the communication." *Id.*

Information about viewed webpages or icons that a user clicks are routinely held to not be "content" under the Federal Wiretap Act (and state analogs) because those types of interactions do not convey the substance or meaning of any messages. *Id.* at 1109; *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) ("user's name, email address, Google account name, home city and state, zip code, and in some instances telephone number" are not content). This sort of "tracking" alleged by Plaintiffs does not amount to "intercepting" of "content." Here, Plaintiffs' Federal Wiretap Act claim (Count One) fails because it is based upon non-content data such as the alleged identities of financial advisors' webpages viewed, taps on a phone number on a webpage, the titles of webpages visited, and the fact that some unidentified person is among the thousands of visitors of Raymond James's website. Even as to Plaintiffs' argument that search terms are content (and on a careful reading of the Complaint it is notable that the Complaint stops short of alleging that Plaintiffs themselves input search terms, despite their characterization of those allegations in their response to the Motion), the inputting of search terms does not convey substance or meaning of any message. The categories of information alleged here are not communications any more than, for example, CCTV footage of window shoppers. In fact, these categories of information are less content-based than a CCTV video, because the data here is not alleged to be tied back to any particular individual, let alone Plaintiffs.

Third, Plaintiffs' Federal Wiretap Act claim also fails because even if Raymond James could be an "interceptor" (despite being a party to the communication), Plaintiffs have not alleged that the communications were contemporaneously intercepted. Though the Federal Wiretap Act does not explicitly require the acquisition of a communication occur contemporaneously with the transmission of the communication, courts have "uniformly concluded that an intercept

requires contemporaneity." *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016); *see Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461 (5th Cir. 1994) (explaining distinction between electronic communications, which can be intercepted, and electronic storage). Here, Plaintiffs did not allege any collection or tracking occurred at the same time as the alleged communications.

**b. Florida's Wiretap Act (Count Three)**

Count Three, a claim for violation of the Florida Wiretap Act claim, also failed to state a claim. For the same reasons discussed above for the Federal Wiretap Act claim, the information alleged to be tracked is not the "content" of a communication. The definition of "content" under the Florida statute is the same as the federal statute, so the same reasoning applies. Fla. Stat. § 934.02(7); *Jacome*, 2021 WL 3087860, at *3 (holding that under the Florida Wiretap Act, "content" does not include a page a user views or items a user clicks).

**c. California Wiretap Act (Count Seven)**

Count Seven also failed to state a claim for similar reasons. The definition of "content" under California law tracks the definition under the Federal Wiretap Act. *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("the meaning of 'contents' of a communication under [the California Wiretap Act] is the same under the [Federal Wiretap Act]"). Accordingly, the California Wiretap Act claim must be dismissed because the information allegedly tracked is not the "content" of a communication under the law.

Moreover, Plaintiffs have not alleged that the communications were intercepted "in transit." California Penal Code § 631(a) requires that information be intercepted "in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California.]"

**2. Privacy Common Law Causes of Action (Counts Four, Eight, and Nine)**

Counts Four, Eight, and Nine also failed to state a claim. Not only do these counts fail to allege conduct that would amount to an actionable invasion of privacy, but also Plaintiffs do not allege that they transmitted any private information beyond general browsing information. There are not factual allegations that any personal or financial information specific to any individual was collected and the screenshots in the Complaint are not alleged to have been from Plaintiffs' use of the website. Even if Plaintiffs had sufficiently alleged some privacy interest was infringed, Plaintiffs still have not sufficiently alleged any of the privacy-related causes of action for other reasons, detailed below.

**a. Intrusion upon Seclusion under Florida Common Law (Count Four)**

Count Four, Intrusion upon Seclusion under Florida Common Law, failed to state a claim because Plaintiffs failed to allege facts from which it could be concluded that Raymond James invaded their private place or engaged in activity that is highly offensive to a reasonable person. *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. 2d DCA 2021) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)). There must be intrusion into a "private place," not merely a private activity, under Florida law. *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011).

Plaintiffs cited *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1206 (Fla. 3d DCA 2023), for the proposition that "electronically accessing private information" can be the basis of an intrusion upon seclusion claim under Florida law, but *Eldridge* does not exactly stand for that

proposition. In *Eldridge*, the court dismissed the plaintiff's claim for lack of standing because, even under Florida's more lenient standing standard, the plaintiff was not injured by "a barrage" of unwanted text messages, even if one of them did come on a weekend and "disrupt[ed his] domestic weekend peace." *Id.* It seemingly rejected the plaintiff's claim that the texts intruded upon his seclusion and noted that even if the texts had been an intrusion, the plaintiff still failed to show "that the intrusion was highly offensive to a reasonable person for the harm to be comparable to injury suffered by an intrusion upon seclusion under Florida common law." *Id.* at 1207. The Third District concluded that the plaintiff's allegations amounted to a barrage of unwanted texts, one of which came in on a weekend, and this "simply [did] not rise to the level of outrageousness required for an invasion of privacy, i.e., that it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency[.]'" *Id.*

In this case, Plaintiffs have alleged even less. They do not allege the invasion of any private place, nor do they allege facts from which the Court could reasonably conclude that any intrusion (if there had been an intrusion) rose to the requisite level of outrageousness.

**b. Invasion of Privacy under the California Constitution (Count Eight)**

Count Eight also failed to state a claim because it failed to sufficiently allege a basis for an invasion of privacy under the California Constitution. The California Constitution sets a "high bar" for invasion of privacy claims. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). "Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that tracking of the

URL of pages a user visited on LinkedIn was not sufficient to allege an invasion of privacy (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012))); *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (finding no intrusion claim based on Google's collection and disclosure of users' data, including their browsing histories); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (finding no invasion of privacy by disclosure of user's addresses, geolocation, the unique device identifier assigned to the user's device, gender, age, time zone, and information about app usage). Here, Plaintiffs' conclusory allegations are not sufficient to demonstrate an invasion of privacy under the California Constitution.

Further, Raymond James could not have invaded Plaintiffs' privacy since Raymond James was the intended recipient of Plaintiffs' information. It could not have "invaded" Plaintiffs' privacy using information that Plaintiffs voluntarily gave Raymond James when they elected to access its website. *See Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (dismissing Plaintiff's intrusion on seclusion claim because the defendant could not have intruded on "communications that it was always the intended recipient of").

Finally, Count Eight must be dismissed to the extent that Plaintiffs seek damages, which are not available for violations based of Article 1, Section 1 of the California Constitution. *See Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1127–28 (S.D. Cal. Jul. 12, 2023) ("California's 'constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction' but it does not confer on a litigant a private right of action for damages." (quoting *Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021))).

**c. Intrusion upon Seclusion under California Common Law (Count Nine)**

Count Nine, Intrusion Upon Seclusion under California Common Law, must be dismissed for similar reasons. To state such a claim under California common law, "a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,] and (2) that the intrusion occur[red] in a manner highly offensive to a reasonable person." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (quoting *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 601 (9th Cir. 2020)) (internal punctuation omitted). The Complaint fails to allege a basis to conclude that Raymond James intruded into Plaintiffs' interactions with Raymond James's own website. Plaintiffs do not allege that Raymond James was a third party to Plaintiffs' dealings with another entity; they allege that Raymond James is the second party to any alleged communications. As a matter of law, Raymond James could not have "intruded" into communications directed to Raymond James. Similarly, Plaintiffs' allegations fail to establish that Plaintiffs had a reasonable expectation of privacy on the portions of Raymond James's website at issue, or that disclosure of Plaintiffs' browsing history or other terms would be "highly offensive" to a reasonable person. *See Cousin,* 681 F. Supp. 3d at 1126 ("[D]isclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct under either common law or the California Constitution.").

**3. Breach of Contract (Count Two)**

Count Two also failed to state a claim for breach of contract. Under Florida law, to plead a breach of contract requires allegation that a valid contract existed, the terms of that contract

were breached, and damages flowed from the breach. *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

The allegations of the Complaint do not include allegations that the terms of the Raymond James website or the Cookie Consent Banner were an offer to Plaintiffs or that Plaintiffs accepted any offer. No mutual obligations are alleged. Aside from these deficiencies in the factual allegations, other courts have concluded that privacy notices, like the one alleged to have existed here, are not contractual in nature. Rather, these courts have considered privacy notices as informational, giving recipients of the notice information about practices and rights. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1092 (W.D. Wash. 2024) ("Because privacy notices serve to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions, they are not contractual in nature."); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) ("The fact that Plaintiffs had to acknowledge Defendants' privacy notice is of no consequence because such notices are not contractual in nature."); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (dismissing breach of contract claim based on privacy notices). Accordingly, Count Two failed to state a claim.

**4. Unjust Enrichment (Counts Six and Eleven)**

Plaintiffs' unjust enrichment counts (Counts Six and Eleven) fail to state a claim because Plaintiffs allege no cognizable benefit conferred on Raymond James. To state a claim for unjust enrichment under Florida law, plaintiffs must allege what here they did not: (1) "a benefit conferred upon a defendant by the plaintiff," (2) "the defendant's appreciation of the benefit," and (3) "the defendant's acceptance and retention of the benefit under circumstances that make

it inequitable for him to retain it without paying the value thereof." *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (citation omitted). California law is similar in this respect. *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) ("The elements of a cause of action for unjust enrichment claim are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'") (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). To prevail, the plaintiff must "directly confer a benefit to the defendant." *Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 281 (Fla. 4th DCA 2023) (citation omitted).

Plaintiffs allege the legal conclusion that Raymond James received a benefit through Plaintiffs' data "which allowed Raymond James to better target them (and other individuals with similar interests) with advertising." But Plaintiffs have not alleged any facts supporting that conclusion, or any facts showing that Plaintiffs were actually targeted by anyone (much less targeted by Raymond James) with specific advertising related to the alleged information tracked. Plaintiffs' conclusory allegations that the alleged tracked data "allowed Raymond James to better target them" are not sufficient to state a claim. As discussed above, Plaintiffs have not alleged how the loss of any allegedly personal information harmed or impacted any specific person (including a named Plaintiff). Nor have they sufficiently alleged facts that support their conclusion that Raymond James used or benefited from that information. While not binding on this Court, other courts have found these types of factual allegations insufficient. *See Giasson v. MRA – Mgmt. Ass'n*, 777 F. Supp. 3d 913, 940–41 (E.D. Wis. 2025) (collecting cases holding that alleging personal information was conferred upon another is not sufficient to allege a benefit); *Bracy v. Americold Logistics LLC*, No. 1:23-cv-5743-TWT, 2025 WL 552676, at *7 (N.D. Ga. Feb.

19, 2025) (rejecting unjust enrichment claim because the only "benefit" alleged to have been provided was the plaintiffs' private information). For these reasons, Plaintiffs' unjust enrichment counts (Counts Six and Eleven) fail to state any claim.

**5. Misrepresentation (Counts Five and Ten)**

Counts Five and Ten also failed to state a claim for fraudulent misrepresentation under Florida and California law and failed to allege fraud with the requisite level of specificity. "Under Florida law, the elements of fraud are '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation.'" *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citation omitted). Under California law, the elements of fraud are: "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013) (citations omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The Eleventh Circuit requires plaintiffs to "plead the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008). To satisfy Rule 9(b), a complaint must allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which

they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (citation omitted).

Plaintiffs' allegations of misrepresentation do not meet this standard. The Cookie Consent Banner is alleged to have stated that "[t]his website uses cookies to ensure you get the best experience on our website. By clicking 'X,' you accept all cookies by default and exit the banner." The Privacy Policy "confirms the 'Cookies and similar tracking technologies are widely used to . . . collect information about your online preferences, and to customize content and advertisements you receive.'"

This is not enough to satisfy Rule 9(b). The Complaint fails to allege when Raymond James allegedly made misrepresentations to the named Plaintiffs, how they were allegedly damaged, and what Raymond James obtained. Plaintiffs, in conclusory fashion, state that their damages include "depriving them of the benefit of the bargain; causing the loss of money and/or property including their personal information, communications, and interactions; defrauding them out of their personal information; depriving them of their right to control their personal information; breaching their confidence; and damaging the value of their personal information, communications, and interactions." But Plaintiffs have not alleged: (1) what alleged information was lost by any specific person; (2) when that alleged information was lost; (3) how the loss of that alleged information has actually harmed or impacted any specific person; and (4) whether Raymond James used that information to serve any specific targeted advertising on the named Plaintiffs. Simply put, there are no specific allegations showing how Plaintiffs were damaged or how Raymond James received a benefit. The allegations in Counts Five and Ten thus lack the particularity needed to state a fraud claim in accordance with Rule 9(b).

## IV. CONCLUSION

For the reasons stated here, the Complaint is due to be dismissed.

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1. Raymond James's Motion to Dismiss (Doc. # 28) is **GRANTED**;

2. Because this Court lacks subject matter jurisdiction, this case is **REMANDED** to the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida; and

3. The Clerk is **DIRECTED** to take the necessary steps to effectuate the remand.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on this July 17, 2026.

**ANNE-LEIGH GAYLORD MOE**
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel of Record